UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

EDGEWOOD VILLAS LIMITED DIVIDEND                 Case No.  DL 08-04858
HOUSING ASSOCIATION LIMITED                      Chapter 11
PARTNERSHIP,                                     Hon. Scott W. Dales

       Debtor.
_____/

**MEMORANDUM OF DECISION REGARDING MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

On September 11, 2008, PNC Bank (the "Bank") filed a Motion for Relief from Stay (the "Motion")(Doc. #104). On October 6, 2008, Edgewood Villas Limited Dividend Housing Association (the "Debtor") filed an Objection to the Motion (the "Objection")(Doc. # 117).  I held a preliminary hearing in Lansing, Michigan on October 22, 2008 to consider the Bank's Motion and the Debtor's Objection.

Our local rule, recognizing the summary nature of lift stay proceedings, requires me to treat the preliminary hearing as analogous to a hearing on a summary judgment motion by inquiring whether the parties have presented disputed issues of material fact, and whether there is a reasonable likelihood that the opposing party, in this case the Debtor, will prevail. See LBR 4001-1(c).  This procedure calls to mind Fed. R. Civ. P. 56, at least inferentially.  During an off-the-record telephone scheduling conference on October 9, 2008, I advised the parties that I would be governed by this local rule.

In its Motion, the Bank first based its request for relief on 11 U.S.C. § 362(d)(3) because the Debtor filed a single asset real estate ("SARE") case.  Under this subsection, I should grant relief from stay unless within 90 days after the entry of the order for relief in an SARE case the Debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time, or the Debtor has commenced monthly payments in the amount equal to interest due on the value of Bank's interest in the real estate. This double aspect of section 362(d)(3) may be referred to as the "pay or plan" requirement. Compare 11 U.S.C. § 362(d)(3)(A) (plan requirement) with id. § 362(d)(3)(B) (pay requirement).  The pay or plan requirements are disjunctive, so that the Debtor can avoid relief from stay under this subsection by satisfying either prong.

The Bank argued strenuously that the Debtor cannot propose a confirmable, feasible, plan. Indeed, whether the Debtor is reasonably likely to confirm a plan is usually relevant under §362(d)(3). In this case, however, the Debtor concedes that it has filed an SARE case, and that it has not met the Plan timing requirement of § 362(d)(3)(A). The Debtor filed a voluntary bankruptcy on May 30, 2008 and filed its Plan on September 26, 2008 – nearly 120 days after the Order for Relief was entered. See 11 U.S.C. §§ 102(6) and 301(b). Because the Debtor missed the deadline, the dispute about the feasibility of the Debtor's plan pursuant to §362(d)(3) is immaterial. See LBR 4001-1(c) (court to identify material factual disputes at preliminary lift stay hearing).

The remaining issue under § 362(d)(3) therefore, is whether the Debtor's post-petition payments to the Bank, aggregating approximately $32,800.00, satisfy the payment obligation as required by § 362(d)(3)(B)(ii). The adequacy of the amount due the Bank is based on the contractual rate of interest and the value of the secured creditors' claim. The Bank claims the Debtor's payment falls far short of the required amount because I should not give the Debtor credit for payments it made under the cash collateral order; in contrast, the Debtor argues that its remittance is more than adequate if I consider *all payments* it made during the 90 day period. At the preliminary hearing, the Bank essentially conceded that the Debtor would satisfy the pay requirement if I gave the Debtor credit for all payments, but the Bank did not concede that I should do so.

Accepting the Bank's most extravagant assertion of the value of the collateral ($4.7 million) and accepting the Bank's proposed interest rate (4.49%), I find the Debtor's payments of approximately $32,800.00 during the months of June, July and August exceed the amount required to meet the statute's "pay" requirement as of the filing of the Motion (approximately $17,500). As the Bank's counsel conceded at the preliminary hearing, the statute provides very little guidance on whether to apply the payments under the cash collateral to the Debtor's "pay" requirement under § 362(d)(3). Nevertheless, the statute does contemplate that the Debtor may meet the pay requirement using rents – classic cash collateral – so I am comfortable giving the Debtor credit for the payments it made under the cash collateral order. If the Bank had intended to preclude this result, it ought to have bargained for the right as a condition of consenting to the use of cash collateral. As for the statute's policy, I believe it is designed to ensure that minimum payments start flowing to the secured creditor at least by the 90th day after the filing of an SARE case. I am satisfied that the policy is satisfied. Therefore, I find 11 U.S.C. § 362(d)(3) provides no basis for relief from stay.

At the preliminary hearing, as its fallback position, the Bank seemed to argue that the Debtor's supposedly doubtful ability to confirm a plan constituted cause for relief from stay. As I indicated at the telephonic scheduling conference and again at the preliminary hearing, I want

to take one step at a time in this case, and I do not intend to collapse the confirmation hearing into the lift stay hearing or, for that matter, the disclosure statement hearing.  Nevertheless, I recognize some overlap between §§ 1129(a)(11), 1125 § 362(d)(2), and § 362(d)(3).  As the Supreme Court noted, § 362(d)(2)(B) requires not merely a showing that there is conceivably to be an effective reorganization, but that there is an effective reorganization that is "in prospect." United States Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-76 (1988).  This means there must be "a reasonable possibility of a successful reorganization within a reasonable time"  -- effectively the same language prescribed in § 362(d)(3)(A).  Id. at 376.

The difference between § 362(d)(2) and (d)(3), however, is that a creditor who relies on § 362(d)(2) must show not only the absence of a reasonable possibility of an effective reorganization,[1] but also that the debtor lacks equity in the property.  The Bank, as the party requesting relief, has the burden of proof on the debtor's equity. See 11 U.S.C. § 362(g)(1)("In any hearing under subsection (d). . . the party requesting such relief has the burden of proof on the issue of the debtor's equity in property.")  Here, the Bank has argued that it is over-secured and entitled to interest, and I am not aware that other secured creditors have asserted a lien against the real estate.  Indeed, the Debtor lists no real estate creditors other than the Bank on Schedule D, and according to the Bank's proof of claim, which I regard as an admission, the Bank pegs its equity cushion at approximately $663,476.00.[2]

More generally, based upon my review of the Plan, I find that a reorganization is certainly in prospect and the Debtor's Plan has a reasonable possibility of being confirmed. Although the Bank contends the Debtor has overestimated its projections and experienced post-petition shortfalls under the cash collateral budget, the Debtor credibly counters that its investors will be providing new money to backstop losses for some period of time post-confirmation, as well as new money to make lump sum, though discounted, payments to unsecured creditors including the Bank if it so elects. The Debtor can address the Bank's doubts about the proposed plan's feasibility during the confirmation hearing.  A motion for relief from stay is a summary proceeding which requires me to make predictions and summary rulings based on the record.  I am not determining that the Plan is feasible, only that the Debtor has made a colorable showing.  Rather, our local rule requires me to evaluate the Motion at the preliminary hearing through the lens of Rule 56, I have done so.  It is neither fair, nor practical,

---

[1] The Bank does not, and could not, argue that the real estate is not necessary to an effective reorganization, assuming a reorganization were in prospect.  Therefore, I construe its Motion as premised on the supposed absence of a reasonable possibility that the court will confirm the Debtor's plan.

[2] The Bank's proof of claim asserts that its debt is $4,663,748.22, and because it is over secured, it has a right to interest. Further, the Bank states the property's value as "not less than $5,327,224.80." I will take judicial notice of the proof of claim. See Fed. R. Evid. 201(c).

nor necessary to require the Debtor to satisfy 11 U.S.C. § 1129 at this point in time, and the Bank shall retain its right to argue against feasibility at confirmation.

Likewise, to the extent the Bank relies on 11 U.S.C. § 362(d)(1), and argues that the stay should be lifted for a "cause" because the Debtor's Plan is not feasible or confirmable, I reject that argument for three reasons. First, as I noted above, I will address feasibility issues at the confirmation hearing. Second, accepting to the Bank's argument that an unconfirmable plan alone establishes "cause" would excise from the statute the text of § 362(d)(2)(A). Third, the Bank's Motion does not warrant the expense and burden of putting the parties to possibly duplicative hearings regarding the conformability of the Debtor's Plan in the context of a final hearing on the Motion and, later, plan confirmation.

The Bank also seems to assert that cause exists for relief from stay because the Debtor is eligible for tax credits that evaporate every day the Debtor is allowed to operate the property. The Bank argues that this dissipation of tax credits effectively decreases its collateral. I believe I can reasonably say that the tax credits may affect the value of the property, regardless of whether the Debtor is presently qualified to receive them and regardless of whether the Bank may claim them as collateral, under real estate law, tax law, or the Uniform Commercial Code's Article 9. Simply put, the tax credits affect property value in this case because they present the owner or future owner with the possibility of a future stream of economic benefit of several hundred thousand dollars each year for several years. Indeed, the Michigan Court of Appeals in Huron Ridge LP v. Ypsilanti Twp., 375 Mich. App. 23 (2007), and the Michigan Tax Tribunal in that same proceeding reasonably recognized the effect of tax credits on fair market value, albeit in the tax assessment context. Even assuming, *arguendo*, that the Debtor is losing the tax credits at the rate of approximately $31,666 per month, under the Bank's own view of the value of its collateral, the equity cushion amply protects the Bank's interest in the property pending the confirmation hearing which will likely take place within a few short weeks or months. If the tax credits are included within the Bank's collateral package, they are and always were a contingent part of that package.

As I indicated, there is some overlap between confirmation, disclosure statement, and to a surprising extent relief from stay issues. Even so, the Bank's Motion, though colorable and by no means frivolous, strikes me as more of a litigation tactic than a *bona fide* motion for relief. It certainly is a warning shot-over-the bow, and probably accomplished its purpose without putting everyone to the expense of an evidentiary hearing on this Motion. However, going forward, and to the greatest extent possible, I will endeavor to confine confirmation issues to the confirmation hearing, disclosure statement issues to the disclosure statement hearing, and so forth. I expect the parties to do the same.

Finally, I again remind the parties that a motion for relief from stay is a summary proceeding by Congressional design.  Today I resolve only the issues that I regard as necessary to resolve this summary proceeding and do so only for the purposes of this proceeding. Therefore, I do not intend this memorandum or the order denying the Motion to finally resolve issues for other purposes or phases of this case.  So, for example, questions of feasibility, extent of liens, and valuation remain open.

Because the decision denying the Motion will be appealable, I will enter a separate order in conformance to Fed. R. Civ. P. 52.

**IT IS SO ORDERED.**



Scott W. Dales
United States Bankruptcy Judge

**Dated: October 27, 2008**